IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARK A. PARISCOFF,

       Plaintiff,

  v.                                    Civil Action 2:17-cv-798
                                           Judge Algenon L. Marbley
                                           Magistrate Judge Jolson

COMMISIONER OF
SOCIAL SECURITY,

       Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Mark A. Pariscoff, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

I.   **BACKGROUND**

Plaintiff filed applications for disability insurance benefits in December 2014 and supplemental security income in April 2016. (Tr. 15, PAGEID #: 62). Plaintiff alleged an amended onset date of February 23, 2015, due to disorders of the back and affective/mood disorder. (*Id*.; Tr. 322, PAGEID #: 369). Plaintiff's mental impairment is not relevant to this decision. After Plaintiff's applications were denied initially and on reconsideration, Plaintiff filed a Request for Hearing by an Administrative Law Judge. (*Id*; Tr. 141–42, PAGEID #: 188–89).

Administrative Law Judge Paul E. Yerian (the "ALJ") held a hearing on April 10, 2017. (*Id*.; Tr. 39–80, PAGEID #: 86–127). On May 11, 2017, the ALJ issued a decision finding that Plaintiff was not disabled as defined in the Social Security Act from February 23, 2015, through the date of the decision. (Tr. 12–38, PAGEID #: 59–85). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 222–27, PAGEID #: 269–74).

On September 11, 2017, Plaintiff commenced this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### A. Plaintiff's Relevant Testimony

Plaintiff was born on October 6, 1963, and he is 5'8" and approximately 150 pounds. (Tr. 44, PAGEID #: 91). He is divorced, is not in a relationship, and lives in the basement of a home owned by friends. (*Id*.; Tr. 74, PAGEID #: 121). Plaintiff has a driver's license and drives approximately once per week. (Tr. 45–46, PAGEID #: 92–93). He completed the eleventh grade in school. (Tr. 46, PAGEID #: 93).

In the past, Plaintiff operated a screw gun to build shipping crates (Tr. 48, PAGEID #: 95); worked in construction, remodeling McDonald's restaurants (Tr. 50, PAGEID #: 97) and hospitals (Tr. 53, PAGEID #: 100); and hung drywall and framing in school walls (Tr. 51, PAGEID #: 98). He also worked a night shift supervisor, overseeing workers and helping them to remodel grocery stores. (Tr. 52, PAGEID #: 99).

When asked to explain why he has been unable to work since November 2014, Plaintiff testified:

> I have three discs in my neck that's injured really bad, the spinal, the spine itself is shrinking in diameter where the nerves come out there's, where the flood [sic]

2

> flows through it's not being able to flow like it should. So if I do pick up something it strains it and it's like a straw trying to pull a strawberry through it, you got to force it to get it through there. So it's very painful if I do pick up something or even try to pick up something that is way too heavy. I can't even budge it because of the pain. It gives off a very bad burning sensation in my right shoulder, goes down my right arm and to not, just putting my whole right arm to sleep. I've actually dropped two coffee cups and they were glass and now I'm drinking out of a plastic coffee cup.

(Tr. 54–55, PAGEID #: 101–02; *see also* Tr. 73, PAGEID #: 120 (stating that the pain radiates down his right arm into his right hand)). Plaintiff is right-handed. (Tr. 73, PAGEID #: 120). Plaintiff explained that the sensation in his arm has been occurring for about three years, and he can't raise it above shoulder height because of the pain. (Tr. 55, PAGEID #: 102). He stated that the pain comes and goes in episodes that last anywhere from ten to fifteen minutes and cause him to feel like he's "on fire" followed by numbness. (Tr. 56, PAGEID #: 103).

Plaintiff testified that his biggest problem is that he can't turn his head and to bend it down "is real strenuous." (*Id.*). He walks to get his mind off of the pain for approximately thirty minutes at a time, and he has walked as many as "28,000 steps in one day" for that reason. (Tr. 56–57, PAGEID #: 103–04). He also listens to music to distract himself from the pain. (Tr. 63, PAGEID #: 110). Plaintiff can stand for approximately ten minutes and then needs to readjust his body. (Tr. 57, PAGEID #: 104).

Plaintiff can lift no more than ten pounds with his right arm "on a good day," but can't lift anything above shoulder level. (*Id.*). On a "bad day," he is unable to pick up a cup of coffee. (*Id.*). Plaintiff testified that, on some days, he doesn't get out of bed because of the pain. (*Id.*). Plaintiff estimated two bad days per week. (*Id.*). With medication, Plaintiff is able to get six hours of sleep per night. (Tr. 58, PAGEID #: 105). Plaintiff smokes marijuana "if it's around" because it helps with the pain. (Tr. 59, PAGEID #: 106).

3

Plaintiff sees his primary care physician every month, has undergone physical therapy, and does the home exercises he learned during physical therapy. (Tr. 61, PAGEID #: 108). A hot shower and a hot compress provide pain relief, but only temporarily. (Tr. 63, PAGEID #: 110).

Plaintiff has two dogs, one with diabetes that requires two shots per day. (Tr. 63, PAGEID #: 110). Plaintiff cares for his own needs, including laundry and preparing meals in a microwave. (Tr. 64, PAGEID #: 111). He explained that he is able to shop once per week because he makes a list, knows what he needs to get, and gets in and out. (*Id.*). For leisure, Plaintiff watches music videos and sometimes movies and walks his dogs outside one at a time. (*Id.*).

Plaintiff testified that he saw neurosurgeon Dr. Kailash Narayan, who explained to him "what's going on with [his] spine and why surgery cannot fix the problem." (Tr. 72, PAGEID #: 119). Dr. Narayan told Plaintiff that his "spine is shrinking in diameter and it's like a straw trying to suck a strawberry through it. You have to force it through. Because the floods don't flow very well." (*Id.*). Plaintiff elaborated:

> He said there was no surgery going to help at all. He said the only thing that could possibly be done is to lose my neck and put my head clean down on my shoulders and take out those discs. And he says that is not really an option because you'll be in pure misery the rest of your life.

(*Id.*).

### B. Relevant Medical Background

Neither Plaintiff nor Defendant included a detailed overview of the medical evidence; hence, the Court sets forth a limited overview of the relevant medical evidence. (*See* Doc. 9 at 4; Doc. 10 at 2).

Magnetic resonance imaging ("MRI") scan results of Plaintiff's cervical spine from February 2015 reflect spinal stenosis at C4-C5, right foramina narrowing at C3-C4, bilateral foramina narrowing at C4-C6, and mild central canal stenosis and foramina narrowing at C6-C7 (Tr. 395, PAGEID #: 442). MRI scan results of Plaintiff's cervical spine from November 2016 reflect "degenerative changes[,] worst at C4-5, C5-6, and C6-7." (Tr. 514, PAGEID #: 561). The November 2016 MRI also showed severe right foramina narrowing at C4-C5, severe bilateral foramina narrowing at C5-C6, and showed moderate spinal canal stenosis at C6-C7. (*Id.*).

Evidence reflects that Plaintiff suffered from numbness (Tr. 395, PAGEID #: 442; Tr. 459, PAGEID #: 506), tingling (Tr. 414, PAGEID #: 461; Tr. 420, PAGEID #: 467), and pain with a limited range of motion in his cervical spine (Tr. 412, PAGEID #: 459; 415, PAGEID #: 462; 417–18, PAGEID #: 464–65; Tr. 420–21, PAGEID #: 467–68; Tr. 426–28, PAGEID #: 473–75; Tr. 458, PAGEID #: 505; Tr. 462, PAGEID #: 509; Tr. 467, PAGEID #: 514; Tr. 469, PAGEID #: 516; Tr. 470–71, PAGEID #: 517–18; Tr. 473, PAGEID #: 520; 476–78, PAGEID #: 523–25; Tr. 479–80, PAGEID # 526–27). Plaintiff underwent physical therapy and, upon completion, he "continue[d] to lack good [cervical range of motion]," which had "improved" only "minimally since start of PT." (Tr. 430, PAGEID #: 477).

Neurosurgeon Dr. Narayan examined Plaintiff on April 4, 2017, and found that he suffered "significant reduced range of motion in the right shoulder" and "significant reduced range of motion in his neck and cervical spine." (Tr. 523, PAGEID #: 570). Dr. Narayan determined that Plaintiff's radiological studies demonstrated cervical spondylosis with stenosis. (Tr. 524, PAGEID #: 571). His ultimate impressions were that Plaintiff suffered from cervical

spondylosis with myelopathy and chronic cervical pain with chronic reduced range of motion in the neck, with indications of severe neck pain and reduced range of motion. (*Id.*).

He informed Plaintiff that, although his cervical myelopathy placed him "at a somewhat increased risk from damaging his spinal cord in the event of any severe fall or trauma," any surgical treatment for that condition would "clearly worsen his neck pain as well as further reduce the range of motion in his neck." (*Id.*). Finally, Dr. Narayan advised Plaintiff "to talk to his primary care physician regarding a referral to Orthopedics because he clearly ha[d] a significant right-sided shoulder problem most likely related to a rotator cuff-type injury." (*Id.*).

### C. Relevant Portions of the ALJ's Decision

The ALJ determined that Plaintiff's severe impairments are degenerative changes of the cervical spine, and depressive and anxiety disorders. (Tr. 18, PAGEID #: 65). As to Plaintiff's cervical spine, the ALJ noted that:

> Magnetic resonance imaging (MRI) scan results of the claimant's cervical spine from February 2015 documented spinal stenosis at C4-C5, right foramina narrowing at C3-C4, bilateral foramina narrowing at C4-C6, and mild central canal stenosis and foramina narrowing at C6-C7 (Exhibits 9F-10F), MRI scan results of the claimant's cervical spine from November 2016 documented degenerative changes, worst at C4-C7, moderate spinal canal stenosis at C6-C7, severe bilateral foramina narrowing at C5-C6, and severe right foramina narrowing at C4-C5 (Exhibit 19F/1).

(*Id.*). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 19, PAGEID #: 66).

The ALJ found that Plaintiff retained the residual function capacity ("RFC") to perform light work, which involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. (Tr. 25, PAGEID #: 72). The ALJ continued, in relevant part, that:

6

> Exposure to hazards such as dangerous machinery and unprotected heights, as well as to dust, fumes, gasses, odors, and poor ventilated areas, is limited to no more than frequently. Climbing ladders, ropes, and scaffolds, crawling, and overhead reaching, are limited to no more than occasionally.

(*Id.*).

As to Plaintiff's credibility, the ALJ stated:

> [a]fter careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could possibly be expected to cause some of the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not sufficiently supported by the medical evidence and other evidence in the record.

(Tr. 26, PAGEID #: 73). The ALJ explained:

> The claimant did not demonstrate muscle atrophy, numbness, paresthesia, spasm, tingling, or weakness, or extremity edema or deformity at different times (Exhibits 15F/2, 5, and 8, and 18F/4, 6, 12, 15, 18–19, 21, 24, and 27). The claimant was neurologically intact upon repeated physical examinations with good or normal balance, coordination, cranial nerves, motor bulk, power, strength, tone, pulses, sensory, reflexes, strength and range of motion in all muscles, joints and extremities. (Exhibits 15F/2, 5, and 8, 17F/4, 18F/3–4, 6–7, 9, 12, 15–16, 18–19, 21, 24–25, and 27, and 21F/1). The claimant was repeated ambulatory with normal gait at times (Exhibit 21F/1). There is no evidence that [Plaintiff] requires prescribed assistive devices such as braces, crutches, splints or a cane, walker or transcutaneous electrical nerve stimulator unit in order to ambulate effectively (Exhibit 12F/1). There is no evidence of bladder incontinence and claudication. (Exhibit 15F/1).

(*Id.*). The ALJ noted that Plaintiff underwent physical therapy and injections, but he found:

> no evidence that [Plaintiff] pursued aggressive and other conservative treatment such as acupuncture, chiropractic care, medial branch blocks, osteopathic manipulative treatment, radiofrequency ablation, spinal cord stimulator implantation, and surgical intervention for these complaints since the amended alleged onset date of disability. The absence of aggressive and other conservative treatment would not be expected if [Plaintiff's] neck pain is as severe as he purports and strongly suggests that his alleged symptoms are stable, tolerable, and well controlled despite the absence of such treatment.

(Tr. 27, PAGEID #: 74).

7

Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers that Plaintiff can perform. (Tr. 32, PAGEID #: 79). Consequently, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act from February 23, 2015, through the date of the decision. (Tr. 33, PAGEID #: 80).

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive...." "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

Even if the ALJ's decision satisfies the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be

8

justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).

## III. DISCUSSION

Plaintiff's single statement of error concerns the ALJ's credibility determination. Specifically, Plaintiff claims the ALJ improperly discredited his statements concerning the intensity, persistence, and limiting effects of his symptoms based on factual inaccuracies and evidence that has no bearing on his cervical spine impairment. This Court agrees.

### A. Relevant Standard

Because SSR 96-7p was no longer in effect at the time of the ALJ's decision, the Court considers whether the ALJ properly applied SSR 16-3p as well as 20 C.F.R. § 404.1529. Pursuant to those guidelines, a two-step process is used for evaluating an individual's symptoms. At step one, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. At step two, the ALJ evaluates the intensity and persistence of the individual's symptoms to determine the extent to which they limit the individual's ability to perform work-related activities.

The objective medical evidence is one of several factors the ALJ must consider in evaluating the intensity, persistence, and limited effects of a plaintiff's symptoms. Other factors include statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as additional factors set forth in the regulations. These factors include:

    1. The individual's daily activities;
    2. The location, duration, frequency, and intensity of pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;

> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2016 WL 1119029 (March 16, 2016) (citing 20 CFR 404.1529(c)(3) and 416.929(c)(3)). Although a discussion of all the factors is not required in the ALJ's decision, SSR 16-3p tasks the ALJ with explaining the credibility determination with sufficient specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brothers v. Berryhill*, Case No. 5:16-cv-01942, 2017 WL 2912535, at *11 (N.D. Ohio June 22, 2017) (citing *Rogers*, 486 F.3d at 248). Ultimately, the ALJ's credibility determination must be "based on a consideration of the entire record," *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011), and supported by substantial evidence, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

### B. The ALJ's Credibility Determination

In this case, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not sufficiently supported by the medical evidence and other evidence in the record." (Tr. 26, PAGEID #: 73). The ALJ explained:

> The claimant did not demonstrate muscle atrophy, numbness, paresthesia, spasm, tingling, or weakness, or extremity edema or deformity at different times (Exhibits 15F/2, 5, and 8, and 18F/4, 6, 12, 15, 18–19, 21, 24, and 27). The claimant was neurologically intact upon repeated physical examinations with

good or normal balance, coordination, cranial nerves, motor bulk, power, strength, tone, pulses, sensory, reflexes, strength and range of motion in all muscles, joints and extremities. (Exhibits 15F/2, 5, and 8, 17F/4, 18F/3–4, 6–7, 9, 12, 15–16, 18–19, 21, 24–25, and 27, and 21F/1). The claimant was repeatedly ambulatory with normal gait at times (Exhibit 21F/1). There is no evidence that [Plaintiff] requires prescribed assistive devices such as braces, crutches, splints or a cane, walker or transcutaneous electrical nerve stimulator unit in order to ambulate effectively (Exhibit 12F/1). There is no evidence of bladder incontinence and claudication. (Exhibit 15F/1)

(*Id.*). Additionally, the ALJ found that Plaintiff underwent conservative treatment including physical therapy and injections, but there was no evidence that Plaintiff:

> pursued aggressive and other conservative treatment such as acupuncture, chiropractic care, medial branch blocks, osteopathic manipulative treatment, radiofrequency ablation, spinal cord stimulator implantation, and surgical intervention for these complaints since the amended alleged onset date of disability. The absence of aggressive and other conservative treatment would not be expected if [Plaintiff's] neck pain is as severe as he purports and strongly suggests that his alleged symptoms are stable, tolerable, and well controlled despite the absence of such treatment.

(Tr. 27, PAGEID #: 74).

As Plaintiff argues, the records cited by the ALJ are largely unsupportive of the ALJ's conclusion in that the records contain objective evidence showing Plaintiff's cervical spine has pain with range of motion and a limited range of motion and conditions including cervicalgia (neck pain), cervical stenosis, cervical spondylosis, neuralgia, neuritis, and radiculitis, and pain in the joint in the shoulder region. (Doc. 11 at 2; *see, e.g.*, Exhibit 15F/2 (finding "cervical spine has pain with ROM and limited ROM," "cervical spondylosis w/o myelopathy," and "neuralgia, neuritis, and radiculitis, UNS"); Exhibit 15F/5 (same); Exhibit 15F/8 (same and finding "cervicalgia (neck pain)" and "pain in joint in shoulder region"); Exhibit 17F/4, PAGEID #: 458, PAGEID #: 505 (finding significantly limited range of motion in neck, which was tender to palpation, and brisk deep tendon reflexes; assessing cervical stenosis and cervical spondylosis,

11

indicating that Plaintiff may be a surgical candidate, prescribing muscle relaxer, and ordering follow-up for re-evaluation); Exhibit 18F/3–4 (finding "cervical spine has pain with ROM and limited ROM" and diagnosing Plaintiff with "radiculopathy, cervical region"); Exhibit 18F/6–7 (same); Exhibit 18F/9 (diagnosing "radiculopathy, cervical region"); Exhibit 18F/15–16 (finding "cervical spine has pain with ROM and limited ROM" and diagnosing "radiculopathy, cervical region").

Although Defendant argues that ALJ was merely "imprecise," "slightly misstated the findings in the treatment notes," and used "unartful wording," there is no avoiding that the ALJ relied on unsupportive records in his credibility determination. (Doc. 10 at 4–5). Defendant admits as much, recognizing that "some of the records the ALJ cited *actually showed a limited range of motion and pain with range of motion in Plaintiff's neck*; so not entirely "good or normal" findings (Tr. 412, 415, 458, 469, 471, 478, 480). (Doc. 10 at 4) (emphasis added).

The ALJ's credibility determination also was based on another inaccurate finding—that Plaintiff failed to pursue aggressive treatment such as surgical intervention. (Doc. 9 at 10). To the contrary, Plaintiff sought intervention from neurosurgeon Dr. Narayan in April 2017 for neck pain, neck stiffness, and a reduced range of motion of the neck and right shoulder. (Tr. 523, PAGEID #: 570).

The ALJ's credibility determination likewise relied on evidence unrelated to Plaintiff's severe impairment of degenerative changes of the cervical spine. (Doc. 9 at 8). For example, the ALJ relied on Plaintiff's normal gait and lack of prescribed assistive devices to discredit his statements concerning the intensity, persistence, and limiting effects of his cervical spine impairment. However, the ALJ did not explain how evidence concerning Plaintiff's gait related

to his cervical spine impairment, which allegedly causes him difficulty lifting, reaching, and handling items. (*Id*. at 10). Defendant likewise failed to explain the ALJ's reliance on evidence unrelated to Plaintiff's cervical spine in her opposition to Plaintiff's Statement of Errors.

For these reasons, the ALJ erred.

### C. The Impact of the ALJ's Errors on His Credibility Determination

Having found that the ALJ improperly relied on inaccurate and irrelevant information in making his credibility determination, the Court must now determine the impact of those errors on this case. The Sixth Circuit has found that the harmless error standard is proper for credibility determinations in the social security context. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Pursuant to that standard, an adverse credibility finding based *partially* on invalid reasons is deemed harmless, and thus does not require remand, if the ALJ also provided other substantial evidence in support of his credibility determination. *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman*, 693 F.3d at 714). Here, however, the ALJ offered no other reasons for discrediting Plaintiff's subjective statements. Consequently, the ALJ's errors are not harmless under the established rule. *See Ulman*, 693 F.3d at 713–14 (upholding the district court's order stating Plaintiff's argument of error in ALJ's credibility analysis "would be persuasive if the ALJ had based his credibility finding solely or primarily on the factual error," and had not provided "other, objective evidence in support of his credibility determination").

Moreover, Defendant's *post hoc* rationalization to support the ALJ's credibility analysis does not alter this Court's conclusion. *Berryhill v. Shalala*, 4 F.3d 993, at *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) ("[C]ourts may not accept appellate counsel's *post hoc*

13

rationalizations for agency action.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id*. Defendant claims, for example, that "the ALJ's determination that Plaintiff did not pursue aggressive treatment for his neck pain is correct" because Plaintiff sought surgical intervention for cervical myelopathy and not chronic cervical pain. But the ALJ did not make such a distinction, and indeed failed to comment on Plaintiff's surgical consultation at all despite Plaintiff's hearing testimony on that topic. (*See* Tr. 72, PAGEID #: 119).

Similarly, Defendant generally claims that "every other finding in the treatment notes cited by the ALJ is normal," but does not point to any normal findings that relate to Plaintiff's cervical spine impairment. (Doc. 10 at 5). That is, "normal" findings unrelated to Plaintiff's degenerative changes of the cervical spine are a not a proper basis upon which to discount Plaintiff's credibility concerning the limited effects of that impairment. *See Kalmbach*, 409 F. App'x at 864 (noting that, although credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence). For example, the fact that Exhibit 15F/2 shows that Plaintiff's cardiovascular and abdominal exam results were "normal," does not undermine that the same record demonstrates "cervical spine has pain with ROM and limited ROM," "cervical spondylosis w/o myelopathy," and "neuralgia, neuritis, and radiculitis, UNS." (Tr. 412, PAGEID #: 459). This is true even where the document shows that Plaintiff's "[n]eck [was] supple without significant lymphadenopathy." (*See id*.). Even to the extent that some normal findings relevant to Plaintiff's cervical spine impairment may exist in the record, a credibility determination "will not

14

pass muster" if it is inconsistent with "the weight of the relevant evidence." *Rogers*, 486 F.2d at 258.

Defendant also incorrectly adds reasons to the credibility determination that the ALJ himself did not provide. For example, Defendant argues that the ALJ considered Plaintiff's activities of daily living, but no such consideration is reflected in the ALJ's explanation for discrediting Plaintiff. Rather, the two paragraphs that provide the ALJ's reasons for discounting Plaintiff's credibility concerning his physical impairment make no mention of his daily activities or compare them to his testimony as required by the regulations. *See* 20 C.F.R. § 404.1529(c); *Holliman v. Comm'r of Soc. Sec. Admin.*, No. 1:15-CV-699, 2016 WL 1739979, at *8 (N.D. Ohio Apr. 7, 2016) (finding that a rationale asserted only by the government may not be considered to explain what the ALJ may have been thinking when determining the plaintiff's statements lacked credibility). In this way, this case mirrors *Haley v. Berryhill*, No. 3:16-cv-383, 2017 WL 4237033, at *5 (S.D. Ohio Sept. 25, 2017), where the Court found that, "although the ALJ did mention elsewhere in his decision [the plaintiff's] … testimony about her daily activities, the ALJ did not refer to this evidence or connect it to his conclusion that her credibility was wanting." *Id*. In that case, the Court found that the ALJ's assessment of Plaintiff's credibility was unsupported by substantial evidence. *Id*.

Finally, Defendant's argument that the residual functional capacity is proper is a red herring because courts reviewing for harmless error in this context examine whether the *credibility determination* nevertheless is supported by substantial evidence when the erroneous findings are set aside. *See, e.g.*, *Stout v. Colvin*, No. 3:14-cv-563, 2016 WL 1048984, at *13 (E.D. Tenn. March 11, 2016) ("The fundamental question, then, is whether the ALJ's *credibility*

*finding* is nonetheless supported by substantial evidence despite this error.") (emphasis added); *Riser v. Comm'r of Soc. Sec.*, No. 13-11135, 2014 WL 1260127, at *16 (E.D. Mich. Mar. 26, 2014) (noting that courts should determine whether an ALJ's *credibility determination* is supported by substantial evidence after "discounting his . . . erroneous findings") (emphasis added); *New v. Colvin*, No. 12-219-ART, 2013 WL 4400522, at *6 (E.D. Ky. Aug. 13, 2013) ("The harmless error analysis proceeds in two steps: 1) what was the ALJ's credibility finding, and 2) leaving the problematic reasoning aside, did the rest of the ALJ's reasons support his finding?"). Because substantial evidence does not remain to support the ALJ's credibility determination in this case, remand is proper. *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman*, 693 F.3d at 714); *see also Meadors v. Astrue*, 370 F. App'x 179, 185–86 (2d Cir. 2010) (finding that ALJ's error in assessing credibility deprived the Court "of the ability to subject his RFC determination to meaningful review").

## IV. CONCLUSION

Given the deference afforded to credibility determinations, the ALJ's errors here may have been harmless had they been a part of a well-reasoned determination that included further observations. *See, e.g.*, *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that credibility determinations are to be given great weight, but they also must be supported by substantial evidence). For the reasons stated, however, the ALJ failed to explain the credibility determination with sufficient specificity to make clear to Plaintiff and to any subsequent reviewers the reasons for his determination. Consequently, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner an502 F.3d 532d Administrative Law Judge under Sentence Four of § 405(g).

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date: March 9, 2018         /s/ Kimberly A. Jolson
                            KIMBERLY A. JOLSON
                            UNITED STATES MAGISTRATE JUDGE